UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERMAINE CORTEZ BRADLEY,

    Plaintiff,

    v.

RON NEAL, et al.,

    Defendants.

CAUSE NO.: 3:19-CV-528-JD-MGG

OPINION AND ORDER

Jermaine Cortez Bradley, a prisoner without a lawyer, filed a complaint (ECF 1)[1] against multiple defendants because of how he was treated following a fire in his cell on January 30, 2019. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

---

[1] Bradley has also submitted a supplement to his complaint, consisting of an Offender Grievance Response Report. (ECF 6.) While complaints cannot be amended piecemeal in federal court, in the interests of avoiding unnecessary delay, the clerk will be directed to include the supplement as an attachment to the complaint. *See* N.D. Ind. L.R. 15-1

On January 30, 2019, there was a fire in Bradley's cell.[2] He was removed from the cell, but only five to ten minutes later, Captain Dykstra ordered Lt. McNeal and Lt. Lott to take Bradley back to the cell. As Lt. McNeal and Lt. Lott escorted Bradley back to his cell in handcuffs, Officer D. Moore and Bradley had a disagreement.[3] Officer Moore then physically assaulted Bradley with a steel master key lock. To avoid being hit, Bradley attempted to turn around, but he hit his head on the corner of a wall and split his forehead open. The lock hit his right arm, causing a deep cut. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Giving Bradley the inferences to which he is entitled at this stage of the case, the court finds that Bradley has stated an excessive force claim against Officer Moore for attacking him with a lock on January 30, 2019, while handcuffed.

Immediately after the attack, Officer Celes (spelled Seles in the body of the complaint) secured the lock to prevent a further attack. He did not, however, report that Officer Moore had attacked Bradley with a lock and did not turn the lock over as part of

---

[2] The Offender Grievance Response Report indicates that Bradley started the fire. (ECF 6 at 3.)

[3] The Offender Grievance Response Report indicates that Bradley was assaulting members of staff, including Officer Moore, with bodily fluids while he was being escorted back to his cell. (ECF 6 at 3.)

the investigation. At most, this is a violation of IDOC policy, and a policy violation does not state a claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Therefore, Bradley may not proceed against Officer Celes.

Following the incident, Bradley was returned to his cell. The cell had not been inspected to determine that it was safe and had not been cleaned. It was still smoky,[4] and Captain Dykstra knew that the smoke posed a risk to Bradley's health Bradley because he has asthma. Bradley remained in the smoky cell for twenty to thirty before he was again removed. He does not allege that he was injured by any unsafe condition in the cell or that he suffered an asthma attack due to spending twenty to thirty minutes in the smoky cell. "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). Here, Bradley has not alleged that he was harmed by being placed in the smoky cell shortly after the fire was extinguished. He alleges only that he could have been harmed, and he therefore has not stated a claim against Captain Dykstra for deliberate indifference to his safety by returning him to the smoky cell.

---

[4] The slats of Bradley's cell were covered with clear plastic, so the smoke was not able to escape.

After twenty to thirty minutes in the smoky cell, Sgt. Gordon told Bradley to cuff-up. Sgt. Gordon was with Officer Thompson and an unknown officer. Bradley told Sgt. Gordon that he no longer had any underwear and he needed something to wear before he went with them. His request was denied, and Bradley was required to walk down the range naked. Bradley found this embarrassing. It can be reasonably inferred that Bradley is alleging that he was forced to walk down the range naked without a valid correctional justification and for the purposes of harassing or humiliating him. *See King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (finding that "[a] prisoner states a claim under the Eighth Amendment when he plausibly alleges that the strip-search in question was motivated by a desire to harass or humiliate rather than by a legitimate justification" and that "[e]ven where prison authorities are able to identify a valid correctional justification for the search, it may still violate the Eighth Amendment if conducted in a harassing manner intended to humiliate and cause psychological pain."). Giving Bradley the benefit of the inferences to which he is entitled at this stage, he will be permitted to proceed on this claim against Sgt. Gordon and Officer Thompson in their individual capacities for compensatory and punitive damages.

Bradley further alleges that Sgt. Gordon violated his religious rights by forcing him to expose his genitals. Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011).[5] Nevertheless, correctional officials may restrict the exercise of religion if

---

[5] The Religious Land Use and Institutionalized Persons Act (RLUIPA) affords broader protections than the First Amendment, but RLUIPA does not authorize an award of money damages. *See Sossamon v.*

4

the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Here, Bradley asserts that Sgt. Gordon knew that Bradley was a Muslim and knew that it violated Bradley's religious beliefs to expose his genitals. It can reasonably be inferred that this requirement was not reasonably related to a legitimate penological interest. Therefore, Bradley may proceed against Sgt. Gordon on a claim that she violated his First Amendment rights by requiring him to expose his genitals while walking down the range naked on January 30, 2019.

Bradley also alleges that Captain Dykstra and Lt. Cabinaw placed him in a restraining chair following the incident with Officer Moore even though he followed all orders and did not resist. He was in the chair for one hour before being placed in SMC without socks, a t-shirt, a sheet or a blanket despite the cold weather. "Once it is established that the force was applied in a good faith effort to maintain discipline and not maliciously or sadistically for the purpose of causing harm, the courts give great deference to the actions of prison officials in applying prophylactic or preventive measures intended to reduce the incidence of riots and other breaches of prison discipline." *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991)(citations omitted – check original). Here, it can be inferred that the use of the restraint chair was without any legitimate purposes. Accordingly, Bradley will be permitted to proceed against

---

*Texas*, 563 U.S. 277, 285 (2011). Because Bradley is no longer housed at the Wabash Valley Correctional Center, no injunctive relief is possible, and he cannot proceed on a claim based on RLUIPA.

5

Captain Dykstra and Lt. Cabinaw for placing him in a restraint chair even though he was following orders and not resisting on January 30, 2019.

Additionally, Bradley alleges that Lt. Cabinaw delayed necessary medical care by placing him in the restraint chair following his injuries instead of seeking medical care for him. Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *See Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008). It is not clear how serious Bradley's medical needs were following the incident with Officer Moore, but giving him the benefit of the inferences to which he is entitled at this stage, he will be granted leave to proceed against Lt. Cabinaw on this claim.

Bradley also asserts that Lt. Cabinaw placed him in danger by permitting a cell extraction team to escort him to a hospital on a stretcher in freezing temperatures in only a pair of boxers, in order to humiliate him. As to this claim, the allegations in the complaint are quite vague. It is unclear when or why Bradley was taken to the hospital,

6

what role Lt. Cabinaw played in that decision, who decided that Bradley should be transported in only his boxer shorts, if a blanket or other covering was provided while outside, or whether Lt. Cabinaw had a reasonable opportunity to provide Bradley with clothing prior to his transport. Even if Bradley's constitutional rights were violated during his transport to the hospital, mere knowledge that another has violated the Constitution does not lead to liability. Here, Bradley has not alleged that Lt. Cabinaw caused him to be transported outside in only his boxer shorts – or even that he had a reasonable opportunity to prevent it. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). This does not state a claim.

Bradley additional alleges that, while he was housed in SMC, he was denied water and a mattress, and he could not flush the toilet for fourteen days. Bradley, however, does not indicate who was responsible for these conditions. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Accordingly, this claim will be dismissed.

Lastly, Bradley's complaint contains vague allegation that Ron Neal allowed Officer Moore to continue to harass him when he returned to his cell house two weeks later. Bradley believes that, because of the incident between them, Officer Moore should have been assigned somewhere else. Bradley, however, has not alleged that Warden Neal was personally involved in the decision not to reassign Officer Moore. There is no general respondeat superior liability under 42 U.S.C. § 1983. *George v. Smith*, 507 F.3d

605, 609 (7th Cir. 2007). Accordingly, Bradley may not proceed against Warden Neal on this claim.

For these reasons, the court:

(1) DIRECTS the clerk to include the supplement submitted by Jermaine Cortez Bradley (ECF 6) as an exhibit to his complaint (ECF 1);

(2) GRANTS Jermaine Cortez Bradley leave to proceed against Officer D. Moore in his individual capacity for compensatory and punitive damages for using excessive force against him when he attacked Bradley with a lock on January 30, 2019, in violation of the Eighth Amendment;

(3) GRANTS Jermaine Cortez Bradley leave to proceed against Sgt. Gordon and Officer Thompson in their individual capacities for compensatory and punitive damages on a claim that he was forced to walk down the range naked without a valid correctional justification and for the purposes of harassing or humiliating him on January 30, 2019, in violation of the Eighth Amendment;

(4) GRANTS Jermaine Cortez Bradley leave to proceed against Sgt. Gordon in her individual capacity for compensatory and punitive damages on a claim that he was forced to expose his genitals in violation of his religion without justification on January 30, 2019, in violation of the First Amendment;

(5) GRANTS Jermaine Cortez Bradley leave to proceed against Captain Dykstra and Officer Cabinaw in their individual capacities for compensatory and punitive damages on a claim that he was placed in a restraint chair without any legitimate purpose on January 30, 2019, in violation of the Eighth Amendment;

(6) GRANTS Jermaine Cortez Bradley leave to proceed against Officer Cabinaw in his individual capacity for compensatory and punitive damages on a claim that necessary medical care for a serious medical condition stemming from injuries suffered in the attack by Officer Moore was delayed, in violation of the Eighth Amendment;

(7) DISMISSES Ron Neal and Officer Celes;

(8) DISMISSES all other claims;

(9) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Officer D. Moore, Sgt. Gordon, Officer Thompson, Captain Dykstra, and Officer Cabinaw at the Indiana Department of Correction with a copy of this order and the complaint (ECF 1) together with the supplement (ECF 6) as required by 28 U.S.C. § 1915(d);

(10) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Officer D. Moore, Sgt. Gordon, Officer Thompson, Captain Dykstra, and Officer Cabinaw respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 5, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT