UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERMAINE CORTEZ BRADLEY,

    Plaintiff,

    v.                                  CAUSE NO. 3:19-CV-528-JD-MGG

D. MOORE, et al.,

    Defendants.

OPINION AND ORDER

Jermaine Cortez Bradley, a prisoner without a lawyer, is proceeding in this case against five defendants. ECF 7. Of relevance here, Bradley is proceeding "against Sgt. [Ball][1] and Officer [Thomas][2] in their individual capacities for compensatory and punitive damages on a claim that he was forced to walk down the range naked without a valid correctional justification and for the purposes of harassing or humiliating him on January 30, 2019, in violation of the Eighth Amendment[.]" *Id.* at 8. "[A]gainst Sgt. [Ball] in her individual capacity for compensatory and punitive damages on a claim that he was forced to expose his genitals in violation of his religion without justification on January 30, 2019, in violation of the First Amendment[.]" *Id.* "[A]gainst Captain Dykstra and Officer Cabinaw in their individual capacities for compensatory and punitive damages on a claim that he was placed in a restraint chair without any legitimate purpose on January 30, 2019, in violation of the Eighth Amendment[.]" *Id.* "[A]gainst

---

[1] Formerly Sgt. Gordon.
[2] Incorrectly identified as "Officer Thompson" in Bradley's complaint.

Officer Cabinaw in his individual capacity for compensatory and punitive damages on a claim that necessary medical care for a serious medical condition stemming from injuries suffered in the attack by Officer Moore was delayed, in violation of the Eighth Amendment[.]" *Id.* at 9. On December 9, 2020, Sgt. Ball, Officer Thomas, Officer Cabinaw, and Captain Dykstra filed a motion for partial summary judgment.[3] ECF 67. With the motion, the defendants provided Bradley the notice required by N.D. Ind. L.R. 56-1(f). ECF 68. Attached to the notice was a copy of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b)(1), "[a] party opposing [a summary judgment] motion must, within 28 days after the movant serves the motion, file and serve (A) a response brief; and (B) any materials that the party contends raise a genuine dispute." After the time to respond expired, the court entered an order instructing Bradley to file a response by April 12, 2012. ECF 71. This deadline passed over three months ago, but Bradley has not responded. Therefore the court will now rule on the partial summary judgment motion.

## I. FACTS

On January 30, 2019, the correctional officers conducted a shake-down of the cells in Bradley's cell block. ECF 70-1 at 15. During the shake-down, Bradley complained to Captain Dykstra about smoke marks on the walls of his cell, which had been left by a

---

[3] Bradley is also proceeding "against Officer D. Moore in his individual capacity for compensatory and punitive damages for using excessive force against him when he attacked Bradley with a lock on January 30, 2019, in violation of the Eighth Amendment[.]" ECF 7 at 8. Officer Moore has not moved for summary judgment.

fire he had started a few weeks prior. *Id.* at 15-16. Captain Dykstra told Bradley to cuff-up for the shake-down, but Bradley refused to do so. *Id.* at 16-18. Bradley eventually agreed to cuff-up for a different officer and was moved to Cell 432 while the officers removed his possessions from his cell. *Id.* at 18-22. While in Cell 432, Bradley removed his jumpsuit and placed it over a light fixture, which caused it to catch on fire. *Id.* at 24. After the fire began, Bradley called for help. *Id.* at 24-25. Sgt. Ball took Bradley out of Cell 432 and placed in a temporary holding cell while the fire was extinguished. *Id.*

Once the fire had been extinguished, Bradley was escorted through the range back to Cell 432. *Id.* at 26-27. While Bradley was being escorted through the range, he tried to spit on Captain Dykstra. *Id.* Bradley then got into an argument with Officer Moore and Officer Moore threw a lock at Bradley, striking him in his arm and causing him to hit his forehead against a door. *Id.* at 27-29. Bradley saw Sgt. Ball passing out trays at the end of the range and asked that she be removed from his path because he was upset and did not want to act out towards her. *Id.* at 29-31. When Bradley was escorted past the trays, he kicked them over. *Id.* at 31. After Bradley returned to Cell 432, he removed his underwear and set it on fire using the light fixture. *Id.* at 31-32. The fire was small but created a lot of smoke and inhibited Bradley's breathing. *Id.* at 35. Bradley begged Sgt. Ball to remove him from the cell. *Id.* Sgt. Ball and Officer Thomas came to Bradley's cell and asked him to cuff-up so they could remove him. *Id.* at 32-33. Bradley requested he be supplied with another pair of underwear prior to being removed from his cell, but the officers denied his request. *Id.* at 33, 35-36. Bradley's clothes were located on a lower level of the prison at the time. *Id.* at 34. Bradley agreed

3

to cuff-up and was taken to a holding cell, where he was immediately supplied with underwear. *Id.* at 38-39. Bradley agreed it was more important to remove him from the smoky cell than to wait for a pair of underwear, but he felt Sgt. Ball should have removed him from his cell and then gotten him a pair of boxers before escorting him down the range to the holding cell. *Id.* at 37-39.

While Bradley was waiting in the holding cell, Lt. Tim Redden, a non-party to this lawsuit, requested approval to place Bradley in a restraint chair, based upon Bradley's "constant staff assaults, arson and disorderly conduct." *Id.* at 42-43; ECF 70-5. Lt. Redden received approval from "facility heads" to place Bradley in the restraint chair and an extraction team was formed, which included Officer Cabinaw. ECF 70-5; ECF 70-1 at 43-45. The extraction team arrived at Bradley's holding cell and transported him to the medical unit on a stretcher. ECF 70-1 at 43-45. Once Bradley arrived at the medical unit, he was given a suicide screening by medical staff and placed in a restraint chair for approximately two hours. *Id.* at 51-52, 76. Nursing staff were present during Bradley's time in the restraint chair. *Id.* at 47. Bradley stated to a nurse watching him in the restraint chair that "this is the reason" inmates are mean to them and asked her, "would I be wrong if the next time I saw you to treat you bad[?]" *Id*. Bradley could tell the nurse thought he was "going to do something," so he informed her "I'm not going to do nothing to you." *Id.* at 47-48. The nursing staff medically treated Bradley upon his release from the restraint chair. *Id.* at 48. Bradley's wounds included a cut on his arm and a cut on his forehead. *Id.* at 52-53. After Bradley's release from the restraint chair, the medical staff examined him and found he had a "3mm scabbed over abrasion" on

4

his forehead "without redness nor drainage," and a "2mm laceration" on his right forearm "without redness and drainage." *Id.* at 53; ECF 70-8 at 7. The medical staff treated Bradley by cleansing his abrasions and applying an antibiotic ointment. ECF 70-8 at 7.

Bradley pled guilty to three conduct violations stemming from the events of January 30, 2019: (1) assaulting Sgt. Ball by kicking a food cart into her lower leg and spitting in her face; (2) refusing Captain Dykstra's order to cuff-up so his cell could be shaken down; and (3) attempting to assault Captain Dykstra by spitting on him. ECF 70-2, 70-3, 70-4. Because Bradley did not respond to the summary judgment motion, the courts accepts these facts as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . .").

## II.     ANALYSIS

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party

and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The defendants seek summary judgment on each of Bradley's claims against Officer Thomas, Sgt. Ball, Captain Dykstra, and Officer Cabinaw. Each defendant will be addressed in turn.

<u>Officer Thomas and Sgt. Ball</u>

Bradley is proceeding on one claim against Officer Thomas and two claims against Sgt. Ball. ECF 7. First, Bradley is proceeding on one claim against both Officer Thomas and Sgt. Ball "that he was forced to walk down the range naked without a valid correctional justification and for the purposes of harassing or humiliating him on January 30, 2019, in violation of the Eighth Amendment[.]" *Id.* at 8.

A prisoner may prevail on an Eighth Amendment claim if he can demonstrate that a search was performed with the intention of harassing or humiliating him. *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (noting that strip searches can violate the Eighth Amendment if they are motivated by a desire to harass and humiliate rather than by a legitimate justification, such as a need for order and security); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (holding that a strip search will violate the

6

Eighth Amendment only if it is "totally without penological justification" or "conducted in a harassing manner intended to humiliate and inflict psychological pain").

Here, the undisputed evidence shows Officer Thomas and Sgt. Ball acted with a legitimate penological justification, and not with a desire to harass or humiliate Bradley, when they forced him to walk down the range naked. *See id.* At the outset, the defendants did not force Bradley to strip and Bradley was only naked because he removed and burned all his clothes. Moreover, the defendants had a valid justification for removing Bradley from his cell without waiting for new clothes, as there was a fire in Bradley's cell that inhibited his breathing and his clothes were located on a lower level of the prison. Bradley agreed at his deposition that it was more important for him to get out of the cell as quickly as possible than to wait for someone to retrieve his clothes. ECF 70-1 at 36. Bradley asserted the defendants should have removed him from his cell and sent someone to get his underwear before escorting him to a holding cell, but the defendants had a valid penological justification for immediately escorting Bradley to a holding cell after Bradley had acted disruptively and started two fires in his cell. Thus, because the undisputed evidence shows the defendants had a legitimate penological justification for escorting Bradley down the range naked, no reasonable jury could find they violated Bradley's Eighth Amendment rights. Summary judgment is warranted in favor of Officer Thomas and Sgt. Ball on this claim.

Second, Bradley is proceeding against Sgt. Ball on one claim "that he was forced to expose his genitals in violation of his religion without justification on January 30, 2019, in violation of the First Amendment[.]" ECF 7 at 8. Prisoners have a right to

exercise their religion under the free-exercise clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Here, as discussed above, Sgt. Ball had a legitimate penological objective in removing Bradley from his cell and moving him to a safe location without waiting for someone to retrieve his clothes. Thus, even assuming Sgt. Ball knew escorting Bradley down the range naked violated his religious beliefs, her actions were reasonably related to a legitimate penological objective. *See id.* Summary judgment is thus warranted in favor of Sgt. Ball on this claim.

Captain Dykstra and Officer Cabinaw

Bradley is proceeding on one claim against Captain Dykstra and two claims against Officer Cabinaw. ECF 7. First, Bradley is proceeding on one claim against both Captain Dykstra and Officer Cabinaw "that he was placed in a restraint chair without any legitimate purpose on January 30, 2019, in violation of the Eighth Amendment[.]" *Id.* at 8.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In order to survive summary judgment, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Id.* at 322. The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or

8

restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019).

Here, the defendants have offered unrefuted evidence they placed Bradley in the restraint chair to restore and maintain discipline, and Bradley has offered no evidence the defendants intended to cause him harm. *See Hendrickson*, 589 F.3d at 890. Specifically, it is undisputed that non-party Lt. Redden requested and received approval to place Bradley in the restraint chair based on his "constant staff assaults, arson and disorderly conduct." ECF 70-5. Moreover, it is undisputed that, prior to being placed in the restraint chair, Bradley had disobeyed an order to cuff-up, set his clothing on fire to start two fires in his cell, attempted to spit on a correctional officer, kicked trays over, and asked that Sgt. Ball be removed from the range because he feared he would harm her. Further, nursing staff were present to monitor Bradley's condition while Bradley was held in the restraint chair, and Bradley made statements to one of the nurses that Bradley believed made the nurse feel threatened. These undisputed facts indicate the defendants placed Bradley in the restraint chair to restore discipline and to mitigate a safety risk to Bradley, the correctional officers, and the nursing staff. *See Whitley*, 475 U.S. at 322; *Hendrickson*, 589 F.3d at 890; *McCottrell*, 933 F.3d at 663; *Rice v. Correctional Medical Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (use of restraint chair was not

9

excessive where the offender fought with his cellmate and refused to comply with an order to leave his cell). Bradley has provided no evidence the defendants placed him in the restraint chair to cause him harm. *See Hendrickson*, 589 F.3d at 890. Accordingly, because no reasonable jury could conclude Captain Dykstra and Officer Cabinaw used excessive force against Bradley by placing him in the restraint chair, they are entitled to summary judgment on this claim.

Second, Bradley is proceeding against Officer Cabinaw "on a claim that necessary medical care for a serious medical condition stemming from injuries suffered in the attack by Officer Moore was delayed, in violation of the Eighth Amendment[.]" ECF 7 at 9. Bradley testified at his deposition that Officer Cabinaw delayed treatment for the abrasions on his forehead and forearm by not allowing medical staff to treat his wounds for approximately two hours while he was held in the restraint chair.

To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994.) Where, as here, a plaintiff alleges a delay in providing medical care, the plaintiff must also produce "verifying medical evidence" that the delay had a detrimental effect. *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) (agreeing with the Eighth Circuit that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed"). Thus, an "action will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened

because of the delay." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009); *see also Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007) (stating that plaintiff must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm").

Here, Bradley has not provided any verifying medical evidence that the two-hour delay caused his condition to worsen or had any detrimental effect. *See Langston*, 100 F.3d at 1240-41*; Knight*, 590 F.3d at 466. Specifically, it is undisputed that Bradley had a 3 mm abrasion on his forehead and a 2 mm laceration on his forearm, which the medical staff treated by cleansing and applying an ointment. ECF 70-8 at 7. Bradley offers no medical evidence that the two-hour delay exacerbated his injuries. *See Williams,* 491 F.3d at 714-15. Moreover, the pain associated with a small abrasion and laceration is *de minimis* and any additional minimal pain for two hours does not rise to the level of a constitutional violation. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) (holding that "[t]here is . . . a *de minimis* level of imposition with which the Constitution is not concerned"); *see also Langston*, 100 F.3d at 1240 ("We have held in the past that a two-hour delay is not an unreasonably long wait for an x-ray, an examination, and possibly a set of a fracture," as "the public often waits longer at hospital emergency rooms"); *Knight*, 590 F.3d at 466 (a two-and-a-half-hour delay for a non-life-threatening shoulder injury was minimal and had no adverse consequences). Accordingly, because there is no medical evidence that the two-hour delay had a detrimental effect on Bradley, no reasonable jury could find Officer Cabinaw's conduct amounted to a

constitutional violation. *See Langston*, 100 F.3d at 1240-41. Summary judgment is thus warranted in favor of Officer Cabinaw on this claim. *See Anderson*, 477 U.S. at 248.

For these reasons, the court:

(1) GRANTS the defendants' motion for partial summary judgment (ECF 67);

(2) DISMISSES Jermaine Cortez Bradley's claims against Sgt. Ball, Officer Thomas, Officer Cabinaw, and Captain Dykstra with prejudice; and

(3) REMINDS the parties Jermaine Cortez Bradley is proceeding in this case only on the remaining claim against Officer Moore.

SO ORDERED on August 10, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT